## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBORAH WELLS, | ) | Civil Action No.   2:24-cv-145 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SLIPPERY ROCK UNIVERSITY | ) | |
| OF PENNSYLVANIA, HOLLY McCOY, | ) | |
| and KEITH DILS, | ) | FILED ELECTRONICALLY |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

### COMPLAINT IN CIVIL ACTION

AND NOW comes Plaintiff, Deborah Wells ("Dr. Wells"), by and through undersigned counsel, and files this Complaint in Civil Action.

### I.  PARTIES

1.      Dr. Wells is an adult individual currently residing in Butler County, Pennsylvania.

2.      Defendant Slippery Rock University of Pennsylvania ("SRU") is a state-owned institution of higher education with its primary place of business at 1 Morrow Way, Slippery Rock, Pennsylvania 16057.

3.      Defendant Holly McCoy ("Ms. McCoy") is an individual who has her primary place of business at 1 Morrow Way, Slippery Rock, Pennsylvania 16057.

4.      During the time relevant to this Complaint Ms. McCoy served as interim human resources director at SRU.

5.      Defendant Keith Dils ("Dr. Dils") is an individual who has his primary place of business at 1 Morrow Way, Slippery Rock, Pennsylvania 16057.

6.      During the time relevant to this Complaint Dr. Dils served as Dean of the SRU College of Education.

## II.  JURISDICTION

7.      The jurisdiction of this Court over the matters set forth in this Complaint is founded upon 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a).

## III.  VENUE

8.      The matters complained of in this Complaint occurred in Butler County, Pennsylvania, in the Western District of Pennsylvania; therefore, venue is appropriate in this Court.

## IV.  ADMINISTRATIVE EXHAUSTION

9.      Dr. Wells filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") in September 2, 2022; this charge stated claims for age and disability discrimination, retaliation, and for violations of the Family and Medical Leave Act.

10.      The aforementioned charge was docketed at 533-2022-02562.

11.      The aforementioned charge was cross-filed with the Pennsylvania Human Relations Commission ("PHRC").

12.      On November 8, 2023, the EEOC issued a Right to Sue Notice regarding the aforementioned complaint.

13.      More than one year has passed since Dr. Wells filed her charge with the PHRC.

14.      Dr. Wells now has exhausted her administrative remedies under the above charge, and her claims are now ripe for adjudication in this Court.

## V.  FACTS

15.      Dr. Wells is currently employed as a Professor of Early Childhood Education at SRU.

16.      Dr. Wells holds a Ph.D. in Early Childhood Education from Arizona State University.

17.      Dr. Wells was hired at SRU in 1987; since that time she has taught graduate courses.

18.     Dr. Wells suffers from rheumatoid arthritis ("RA"), a serious autoimmune condition in which the body's immune system attacks its own tissue.

19.     RA causes joint inflamation and potential bone loss and, as a result, makes walking and movement difficult.

20.     In order to control her RA symptoms Dr. Wells is forced to take immunosuppressant medication.

21.     The immunosuppressant medication, in turn, renders Dr. Wells more vulnerable to serious illness should she become infected with the coronavirus (COVID).

22.     In addition, Dr. Wells's age (67) puts her in a high-vulnerability group for COVID, and a COVID infection may lead to a serious flare-up of Dr. Wells's RA symptoms.

23.     Patients with RA are more susceptible to COVID infection, and if infected with COVID those with rheumatoid arthritis have a higher chance of severe symptoms, hospitalization, and death.

24.     There is also evidence that vaccines have a diminished response in rheumatoid arthritis patients.

25.     On Aug. 26, 2014, Dr. Wells met with Ms. McCoy in order to discuss accommodation for her RA; among the accommodations that she suggested were being provided with accessible parking and an ergonomic work station; she also requested that her classes be scheduled near her office.

26.     Dr. Wells's initial requests for accommodation were approved.

27.     Since 2014 Dr. Wells has not been required to supervise undergraduate student teachers in the field.

28.     Prior to the COVID pandemic Dr. Wells taught 12 credits during the Fall Semester and 12 credits during the Spring Semester.

29.     Because of the extreme risk posed by COVID Dr. Wells avoids crowds and always wears a mask in public.

30.     In order to protect her health and avoid contracting COVID Dr. Wells has to minimize her contact with others while teaching.

31.     During Spring 2021, all of the courses at SRU transitioned to online-only format.

32.     Remote and online learning had been commonplace at SRU; for instance, all reading classes have been held online for the past 12 years.

33.     For the Fall 2021 semester Dr. Wells was assigned to teach two graduate courses and two undergraduate courses, all of which were taught online.

34.     During the Spring 2022 semester SRU transitioned back to in-person classes and Dr. Wells was assigned initially to teach in-person undergraduate courses.

35.     Online or remote teaching would dramatically reduce Dr. Wells's potential exposure to COVID, and she was granted permission to teach online during the Spring 2022 semester.

36.     In March 2022 Dr. Wells wrote to Michelle Amodei ("Dr. Amodei") requesting accommodation in the form of leave to teach only online graduate courses.

37.     Dr. Amodei responded by indicating that Dr. Dils would decline approving an all-graduate course schedule for Dr. Wells for budgetary reasons.

38.     Dr. Amodei also suggested that there was a possibility that Dr. Wells would be permitted to teach the undergraduate course online.

39.     By this time Dr. Wells had been teaching half-time; she had been taking Family and

Medical leave.

40.     Dr. Wells understood that the fact that she had been allowed to teach online exclusively during the Spring 2022 semester was an accommodation.

41.     Despite the fact that she had been teaching online, Dr. Wells would be required to return to teaching in-person.

42.     In light of the fact that she would be requested to return to in person teaching, Dr. Wells requested accommodation in the form of being allowed to teach online for the Fall 2022 semester.

43.     In support of her request for accommodation Dr. Wells supplied a letter from her primary care physician, Randy Krieder, M.D.

44.     Even though Dr. Wells had been allowed to teach online during the Spring 2021 semester, Ms. McCoy denied her request and claimed that in-person teaching was an essential element of her position.

45.     Ms. McCoy further rejected the medical documentation supplied by Dr. Wells.

46.     Rather than grant Dr. Wells leave to teach remotely, Ms. McCoy suggested that she could either wear a mask or teach behind a protective barrier.

47.     Protective barriers are an insufficient precaution against COVID because they do not protect against virus particles that may settle on services; in addition, infected air may become trapped behind these barriers.

48.     Other measures, such as air ionization systems, have not been proven to filter out significant amounts of COVID particles.

49.     On August 12, 2022, Dr. Wells had a meeting with Dr. Dils and Ms. McCoy.

50.     During this meeting Dr. Dils noted that other faculty were returning to campus to teach, ignoring the fact that these faculty were not immunocompromised and faced a lesser risk of serious illness from COVID than Dr. Wells.

51.     On August 24, 2022, Dr. Wells appealed the decision denying her request for accommodation.

52.     Shortly before classes were scheduled to begin a student emailed Dr. Wells and told her that she had became infected with COVID and would have to miss class.

53.     There is no mask mandate for the SRU campus, and SRU does not have any reliable means of tracking COVID infection on campus.

54.     At the time, Butler County, Pennsylvania, was listed as a "high transmission" area for COVID infections, as are the Pennsylvania counties where most of SRU's students come from.

55.     Being forced to teach in person would expose Dr. Wells to an unnecessary serious risk of COVID infection and its consequences.

56.     The accommodations recommended by Dr. Dils and Ms. McCoy–mask, protective barriers, and air ionization system–fail to offer Dr. Wells adequate protection from COVID infection.

57.     Forcing Dr. Wells to teach in-person expose her to a risk of serious harm that younger and/or non-disabled faculty are not being exposed to.

58.     In October 2022, Dr. Wells filed a renewed request for accommodation through the SRU Human Resources office.

59.     For the Spring 2023 semester, Dr. Wells was scheduled to teach one online class rather than two online classes; this was a decrease in the two online classes Dr. Wells was assigned

to teach during the Fall 2022 semester.

60.     Over the Spring 2023 semester, Dr. Wells exhausted her leave guaranteed under the Family and Medical Leave Act ("FMLA"), forcing her to use sick leave.

61.     Dr. Wells's renewed request for an accommodation was denied in January 2023.

62.     As of the Spring 2023 semester, SRU was not requiring face masks on campus, nor was it requiring regular COVID-19 related testing for on-campus visitors.

63.     In May 2023, Dr. Wells was contacted by her new departmental chair, Linda Zane ("Dr. Zane"), regarding her schedule for the upcoming semester.

64.     Dr. Zane recommended that Dr. Wells be assigned to teach a full course load (four courses including two courses for an online graduate program) remotely, but Dr. Dils denied this request.

65.     By failing to extend to her a permanent remote teaching option to Dr. Wells SRU (and Dr. Dils) is failing to provide a reasonable accommodation for her disability.

66.     Moreover, Dr. Dils did not engage Dr. Wells in any interactive process to determine an appropriate accommodation for her disability.

67.     Forcing Dr. Wells to teach in-person also constitutes retaliation for her 2014 and Spring 2021 requests for accommodation.

68.     Dr. Wells has been treated less favorably than her younger and/or non-disabled colleagues.

69.     Dr. Wells demands a jury trial.

## VI.  COUNTS

### COUNT I: DISCRIMINATION ON THE BASIS OF DISABILITY
### Violation of the Rehabilitation Act, 29 U.S.C. § 794 et seq.
### Plaintiff Deborah Wells vs. Defendant Slippery Rock Univ. of Pennsylvania

70.    The preceding paragraphs are incorporated as if set forth at length herein.

71.    The Rehabilitation Act prohibits entities that receive federal funding from discriminating on the basis of disability.

72.    SRU is a post-secondary educational institution that receives funding from the federal government.

73.    Dr. Wells suffers from rheumatoid arthritis, a condition that effects her daily living functions of walking and movement.

74.    To treat her rheumatoid arthritis, Dr. Wells takes immunosuppressant medication, which in turn leaves her more susceptible to serious complications if she were to get COVID-19.

75.    Dr. Wells is qualified for her position at SRU and she is able to carry out the duties of her position with reasonable accommodation.

76.    Being permitted to work remotely is a reasonable accommodation for Dr. Wells's disability.

77.    By denying Dr. Wells's request for accommodation SRU engaged in an adverse employment action against her.

78.    SRU failed to engage in any further interactive process for the purpose to determining an appropriate accommodation.

79.    Dr. Wells was treated less favorably than her non-disabled colleagues.

80.    Dr. Wells seeks all remedies and damages permitted under the Rehabilitation Act,

including, but not limited to, back pay, front pay, emotional distress, medical harm, reputation harm damages, reinstatement, attorney's fees, costs, and prejudgment and post-judgment interest.

### COUNT II: DISCRIMINATION ON THE BASIS OF DISABILITY
**Violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.**
**Plaintiff Deborah Wells vs. Defendants Holly McCoy and Keith Dils**

81.     The preceding paragraphs are incorporated as if set forth at length herein.

82.     The individual Defendants–Ms. McCoy and Dr. Dils–are being sued in their official capacities for prospective injunctive relief including, but not limited to, providing Dr. Wells with reasonable accommodation for her disabilities.

83.     Dr. Wells suffers from rheumatoid arthritis, a condition that effects her daily living functions of walking and movement.

84.     To treat her rheumatoid arthritis, Dr. Wells takes immunosuppressant medication, which in turn leaves her more susceptible to serious complications if she were to get COVID-19.

85.     Dr. Wells is qualified for her position at SRU and she is able to carry out the duties of her position with reasonable accommodation.

86.     Being permitted to work remotely is a reasonable accommodation for Dr. Wells's disability.

87.     By denying Dr. Wells's request for accommodation SRU engaged in an adverse employment action against her.

88.     SRU failed to engage in any further interactive process for the purpose to determining an appropriate accommodation.

89.     Dr. Wells was treated less favorably than her non-disabled colleagues.

90.     Dr. Wells requests prospective injunctive relief for an ongoing and pervasive

violation of federal law by state officers.

91.     Dr. Wells requests all prospective injunctive relief permitted under law including, but not limited to, reasonable accommodation for her disabilities and other declaratory and injunctive relief, as well as any other damages permitted under law such as reasonable attorneys' fees.

### COUNT III: RETALIATION
**Violation of the Rehabilitation Act, 29 U.S.C. § 794 et seq.**
**Plaintiff Deborah Wells vs. Defendant Slippery Rock Univ. of Pennsylvania**

92.     The preceding paragraphs are incorporated as if set forth at length herein.

93.     The Rehabilitation Act prohibits entities that receive federal funding from retaliating against employees who request accommodation for their disabilities.

94.     SRU is a post-secondary education institution that receives funding from the federal government.

95.     Dr. Wells engaged in actions protected by the Rehabilitation Act when she requested accommodation for her disabilities in 2014 and 2021.

96.     Dr. Wells was subjected to an adverse employment action when she was denied leave to teach remotely in 2022.

97.     The aforementioned adverse employment action was in retaliation for her prior requests for accommodation in 2014 and 2021.

98.     Similarly situated employees who did not ask for accommodation were not subjected to similar adverse employment action.

99.     Dr. Wells seeks all remedies and damages permitted under the Rehabilitation Act, including, but not limited to, back pay, front pay, emotional distress, medical harm, reputation harm

damages, reinstatement, attorney's fees, costs, and prejudgment and post-judgment interest.

### COUNT IV: RETALIATION
**Violation of the Americans with Disabilities Act, 42 U.S.C. 12101 et seq.**
**Plaintiff Deborah Wells vs. Defendants Holly McCoy and Keith Dils**

100.    The preceding paragraphs are incorporated as if set forth at length herein.

101.    The individual Defendants–Ms. McCoy and Dr. Dils–are being sued in their official capacities for prospective injunctive relief including, but not limited to, providing Dr. Wells with reasonable accommodation for her disabilities.

102.    The ADA prohibits employers from retaliating against employees who request accommodation for their disabilities.

103.    Dr. Wells engaged in actions protected by the ADA when she requested accommodation for her disabilities in 2014 and 2021.

104.    Dr. Wells was subjected to an adverse employment action when she was denied leave to teach remotely in 2022.

105.    The aforementioned adverse employment action was in retaliation for her prior requests for accommodation in 2014 and 2021.

106.    Similarly situated employees who did not ask for accommodation were not subjected to similar adverse employment action.

107.    Dr. Wells requests prospective injunctive relief for an ongoing and pervasive violation of federal law by state officers.

108.    Dr. Wells requests all prospective injunctive relief permitted under law including, but not limited to, reasonable accommodation for her disabilities and other declaratory and injunctive relief, as well as any other damages permitted under law such as reasonable attorneys'

fees.

## COUNT V: DISCRIMINATION ON THE BASIS OF AGE
### Violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.
### Plaintiff Deborah Wells vs. Defendant Slippery Rock Univ. of Pennsylvania

109.    The preceding paragraphs are incorporated as if set forth at length herein.

110.    The individual Defendants–Ms. McCoy and Dr. Dils–are being sued in their official capacities for prospective injunctive relief including, but not limited to, affording Dr. Wells the opportunity to teach remotely.

111.    Dr. Wells is over 40 years of age and, as such, is a member of a class protected by the ADEA.

112.    Dr. Wells was qualified for her position at SRU.

113.    Dr. Wells was subjected to an adverse employment action when she was denied leave to work remotely.

114.    Other SRU faculty members who are significantly younger were not subject to similar adverse employment action.

115.    Dr. Wells was subjected to an adverse employment action on the basis of her age.

116.    Dr. Wells requests prospective injunctive relief for an ongoing and pervasive violation of federal law by state officers.

117.    Dr. Wells requests all prospective injunctive relief permitted under law including, but not limited to, being afforded the opportunity to teach remotely and other declaratory and injunctive relief, as well as any other damages permitted under law such as reasonable attorneys' fees.

12

## COUNT VI: INTERFERENCE WITH PROTECTED RIGHTS
### Violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq.
### Plaintiff Deborah Wells vs. All Defendants

118.    The preceding paragraphs are incorporated as if set forth at length herein.

119.    An employer may not interfere with, restrain, or deny any rights secured by the FMLA.

120.    In order to state a claim for interference with rights under the FMLA, a plaintiff must demonstrate that 1) she was an eligible employee under the FMLA, 2) that the defendant was an employer subject to the FMLA's requirements, 3) the plaintiff was entitled to leave under the FMLA, 4) the plaintiff gave the employer notice of her intent to take leave, and 5) the plaintiff was denied benefits to which she was entitled to under the FMLA.

121.    Alternatively, in order to state a claim for retaliation under the FMLA, a plaintiff must demonstrate that 1) she exercised a right guaranteed by the FMLA, 2) she suffered an adverse action, and 3) the adverse action was causally related to the plaintiff's exercise of an FMLA related right.

122.    Because SRU employed more than 50 employees during the course of a calender year, it is an employer for the purposes of liability under the FMLA.

123.    Because they had control over the terms and conditions of Dr. Wells's employment Ms. McCoy and Dr. Dils are employers subject to the FMLA.

124.    As interim HR Director, Ms. McCoy had primary oversight over granting FMLA leave.

125.    As supervisors and/or managers, Ms. McCoy and/or Dr. Dils were in the position to influence the grant or denial of Dr. Wells requests for leave.

13

126.    By denying Dr. Wells's request for accommodation, SRU, Ms. McCoy, and Dr. Dils forced her to take FMLA leave.

127.    By forcing her to take FMLA leave, SRU, Ms. McCoy, and Dr. Dils forced Dr. Wells to deplete her FMLA leave allotment, thereby interfering with her subsequent rights to use FMLA leave.

128.    The continued interference with Dr. Wells's rights to FMLA leave has negative financial implications for her.

129.    The continued interference with Dr. Wells's rights to FMLA leave constitutes an adverse employment action.

130.    Dr. Wells seeks all remedies and damages available under the FMLA, including but not limited to, backpay, liquidated damages, front pay, out of pocket costs, reasonable costs and attorneys' fees, pre and post-judgment interest.

### COUNT VII: DISCRIMINATION ON THE BASIS OF DISABILITY
**Violation of the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq.
Plaintiff Deborah Wells v. All Defendants**

131.    The preceding paragraphs are incorporated as if set forth at length herein.

132.    Ms. McCoy and Dr. Dils are both supervisory employees who aided and abetted discriminatory actions against Dr. Wells and are being sued in their personal capacities.

133.    Dr. Wells suffers from rheumatoid arthritis, a condition that effects her daily living functions of walking and movement.

134.    To treat her rheumatoid arthritis, Dr. Wells takes immunosuppressant medication, which in turn leaves her more susceptible to serious complications if she were to get COVID-19.

135.    Dr. Wells is qualified for her position at SRU and is able to carry out the duties of

her position with reasonable accommodation.

136.    Being permitted to work remotely is a reasonable accommodation for Dr. Wells's

disability.

137.    By denying Dr. Wells's request for accommodation SRU engaged in an adverse

employment action against her.

138.    SRU failed to engage in any further interactive process for the purpose to determining

an appropriate accommodation.

139.    Dr. Wells was treated less favorably than her non-disabled colleagues.

140.    Dr. Wells seeks all remedies and damages permitted under the PHRA, including, but

not limited to, back pay, front pay, emotional distress, medical harm, reputation harm damages,

reinstatement, attorney's fees, costs, and prejudgment and post-judgment interest.

### COUNT VIII: DISCRIMINATION OF THE BASIS OF AGE
### Violation of the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq.
### Plaintiff Deborah Wells v. All Defendants

141.    The preceding paragraphs are incorporated as if set forth at length herein.

142.    Ms. McCoy and Dr. Dils are both supervisory employees who aided and abetted

discriminatory actions against Dr. Wells and are being sued in their personal capacities.

143.    Dr. Wells is over 40 years of age and, as such, is a member of a class protected by

the PHRA.

144.    Dr. Wells is qualified for her position at SRU.

145.    Dr. Wells was subjected to an adverse employment action when she was denied leave

to work remotely.

146.    Other SRU faculty members who are significantly younger were not subject to similar

adverse employment action.

147.    Dr. Wells was subjected to an adverse employment action on the basis of her age.

148.    Dr. Wells seeks all remedies and damages permitted under the PHRA, including, but not limited to, back pay, front pay, emotional distress, medical harm, reputation harm damages, reinstatement, attorney's fees, costs, and prejudgment and post-judgment interest.

### COUNT IX: RETALIATION
**Violation of the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq.**
**Plaintiff Deborah Wells v. All Defendants**

149.    The preceding paragraphs are incorporated as if set forth at length herein.

150.    Ms. McCoy and Dr. Dils are both supervisory employees who aided and abetted retaliatory actions against Dr. Wells and are being sued in their personal capacities.

151.    The PHRA prohibits employers from retaliating against employees who request accommodation for their disabilities.

152.    Dr. Wells engaged in actions protected by the PHRA when she requested accommodation for her disabilities in 2014 and 2021.

153.    Dr. Wells was subjected to an adverse employment action when she was denied leave to teach remotely in 2022.

154.    The aforementioned adverse employment action was in retaliation for her prior requests for accommodation in 2014 and 2021.

155.    Similarly situated employees who did not ask for accommodation were not subjected to similar adverse employment action.

156.    Dr. Wells seeks all remedies and damages permitted under the PHRA, including, but not limited to, back pay, front pay, emotional distress, medical harm, reputation harm damages,

reinstatement, attorney's fees, costs, and prejudgment and post-judgment interest.

<div style="margin-left: 50%;">

Respectfully Submitted,

LIEBER HAMMER HUBER & PAUL, P.C.

s/James B. Lieber
James B. Lieber, Esq.
Pa. I.D. No. 21748
Thomas M. Huber, Esq.
Pa. I.D. No. 83053
Jacob M. Simon, Esq.
Pa. I.D. 202610
1722 Murray Ave., 2nd Floor
Pittsburgh, PA 15217
(412) 687-2231 (tel.)
(412) 687-3140 (fax)

</div>

17